**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 01-20377
_____


BETTIS GROUP, INC.; ROYAL HOLT BETTIS, JR.;
TARPON BENIN II, INC.; BAHAMAS W.A. LDC;
WEST AFRICA, LDC,

                          Plaintiffs-Counter Defendants-Appellants,

versus


TRANSATLANTIC PETROLEUM CORP.; ET AL,

                                              Defendants,

TRANSATLANTIC PETROLEUM CORP., formerly
known as PROFCO RESOURCES, LTD.,

                          Defendant-Counter Claimant-Appellee.

                     Consolidated with

_____

No. 01-20379
_____

BETTIS GROUP INC.; ROYAL HOLT BETTIS, JR.;
TARPON BENIN II, INC.; BAHAMAS W.A. LDC;
WEST AFRICA LDC,

                          Plaintiffs-Counter Defendants-Appellants,

versus

SOGW BENIN, LTD; TIFAND, INC.;
TARPON BENIN LDC; BBFI BENIN LTD.;
CANDELA RESOURCES, LTD.,

                          Defendants-Counter Claimants-Appellees.

_____

Appeals from the United States District Court
for the Southern District of Texas
(H-00-CV-3310)

_____
December 23, 2002

Before KING, Chief Judge, and REAVLEY and WIENER, Circuit Judges.

PER CURIAM[*]:

Plaintiffs/Counter-Defendants/Appellants (collectively, "Plaintiffs") filed the two captioned lawsuits, which are consolidated for purposes of this appeal, seeking enforcement of the arbitration award that they had obtained against the Defendants/Counter-Claimants/Appellees. In the first case (hereafter, the "Guarantor Lawsuit"), the district court sustained the counterclaim of TransAtlantic Petroleum Corp. ("TransAtlantic") which asserted that, as guarantor only, it was not subject to the arbitration provision that led to the award in question. In the second case (hereafter the "Affiliates Lawsuit"), the district court concluded that the arbitrator's award to the Plaintiffs was grounded in damages that were too speculative to support the award, thereby constituting "manifest disregard of the law," which the court equated with misconduct by the arbitrator. As a result of these rulings, the district court vacated the arbitration award in its entirety as to all parties previously found liable by the arbitrator (collectively, "Defendants"), whether as obligors or guarantor, and dismissed both actions.

_____

[*] Pursuant to 5TH Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH Cir. R. 47.5.4.

The Plaintiffs appeal all rulings of the district court in both suits, principal among which are (1) the court's determination that the arbitrator erred in finding that TransAtlantic was bound to arbitrate, and (2) the court's vacatur of the arbitration award as to all Defendants. We reverse these rulings of the district court and remand with instructions to enforce the arbitrator's award as rendered.

## I. Facts and Proceedings

Tarpon-Benin, S.A., a company that is not a party to this litigation, was incorporated pursuant to the laws of the West African Republic of Benin ("Benin") by corporate and individual associates of one of the Plaintiffs, Bettis Group, Inc. ("Bettis Group").[1] The initial shareholders of Tarpon-Benin were those affiliates of Bettis Group (collectively "the Bettis Affiliates") but not Bettis Group itself. The government of Benin granted Tarpon-Benin a petroleum drilling concession (the "Concession Contract"), under which Tarpon-Benin assumed various contractual obligations and acquired drilling rights, in particular the right to drill offshore in an area designated as Block 2.

Presumably to obtain additional capital for exploitation of the Concession Contract, Tarpon-Benin brought Profco Resources, Ltd. (subsequently renamed TransAtlantic and referred to throughout this opinion as such) into the venture through the sale of Tarpon-

---

[1] The laws of Benin require seven shareholders, at least one of whom must be a natural person.

Benin stock to individual and corporate affiliates of TransAtlantic, but not to TransAtlantic itself. At all times relevant to this appeal, the shareholders of Tarpon-Benin consisted of (1) the Bettis Affiliates and (2) all captioned Defendants-Counter Claimants-Appellees other than TransAtlantic (collectively "the TransAtlantic Affiliates"). Together, the TransAtlantic Affiliates owned 75% of Tarpon-Benin's issued and outstanding stock, controlling its board of directors and its principal committees, and held the presidency.

The owners of all Tarpon-Benin stock signed a Shareholders Agreement (the "Agreement"). Although not shareholders themselves, the two primary corporate players in the venture — Bettis Group and TransAtlantic — signed the Agreement to guarantee some obligations of some of their respective affiliates that were shareholders, as expressly set forth in the body of the Agreement. Specifically, section 6.5 of the Agreement identifies which obligations of which shareholders among the TransAtlantic Associates are guaranteed by TransAtlantic:

> 6.5 Guaranty of SOGW Benin's Obligations
> [TransAtlantic] hereby agrees to guarantee (i) any and all obligations of SOGW Benin to [Tarpon-Benin] and (ii) any and all obligations of SCL, Tifand, and LDC in their capacities as Shareholders of [Tarpon-Benin].[2]

---

[2] Section 6.7 of the Agreement mirrors section 6.5, specifying which obligations of which shareholders among the Bettis Group Affiliates were guaranteed by Bettis Group: "6.7 Guarantee of West Africa's Obligations. The Bettis Group agrees to guarantee (i) any and all obligations of West Africa to [Tarpon-Benin] and (ii) any

4

After Tarpon-Benin drilled a dry hole in Block 2, differences developed between the Plaintiffs and the Defendants about the future of the venture. The Concession Contract with Benin was eventually lost. When the dispute between the two factions could not be resolved amicably, the Plaintiffs invoked the arbitration clause of the Agreement, instituting arbitration proceedings against the Defendants for breach of the Agreement. These proceedings, which began in Denver and were transferred to Dallas by unanimous consent of the participants,[3] culminated in an award of $1.35 million, plus fees and interest, against the Defendants.[4]

To enforce their arbitration award, the Plaintiffs filed the captioned lawsuits in federal district court in Houston. TransAtlantic counterclaimed in the Guarantor Lawsuit, seeking (1) reversal of the arbitrator's preliminary ruling that TransAtlantic was subject to arbitration and (2) vacatur of the arbitration award. The TransAtlantic Affiliates counterclaimed in the Affiliates Lawsuit, also seeking vacatur of that award but contesting neither the validity of the agreement to arbitrate nor their susceptibility to arbitration. Following the filing of the

_____

and all obligations of Tarpon II and RHB in their capacities as Shareholders of [Tarpon-Benin]."

[3] The transfer to Dallas occurred after TransAtlantic boycotted the proceedings, although the arbitrator stated that the proceedings would be moved back to Denver if TransAtlantic decided to participate and insisted on a Denver situs.

[4] In its appellate brief, TransAtlantic states that the award against it is in "the total sum of $1,848,359.32."

5

Defendants' cross-motions for summary judgment, the district court entered orders in both lawsuits.

As an initial matter in the Guarantor Lawsuit, the district court reversed the arbitrator's preliminary ruling that TransAtlantic was bound to arbitrate, crediting TransAtlantic's contention that it did not consent to arbitrate when it signed the Agreement as guarantor of the obligations of the TransAtlantic Affiliates, as expressly spelled out in the body of the Agreement. The court went on to vacate the arbitration award as to TransAtlantic.

In the Affiliates Lawsuit, the district court vacated the arbitrator's award, crediting the TransAtlantic Affiliates' characterization of the arbitrator's ruling as constituting "manifest disregard for the law" and therefore "misconduct" by the arbitrator. In so doing, the court rejected the Plaintiffs' contentions that (1) the shareholders' express waiver of appeal in the Agreement precluded the court's appellate review of the award, (2) manifest disregard of the law is not a valid basis for vacating the arbitrator's award anyway, and (3) in fact and in law, the arbitrator had not manifestly disregarded the law applicable to the instant dispute. The district court was of the opinion that under the substantive law of Texas (which is the law selected by the parties in the Agreement), the damages were too speculative to support an award, so that the arbitrator's award of such damages constituted manifest disregard for the law and thus arbitrator

6

misconduct.  In the end, the district court vacated the arbitration award in toto and dismissed both lawsuits, after which the Plaintiffs timely filed notices of appeal.

## II. Analysis

A.  Standard of Review

In the Affiliates Lawsuit, we review de novo the court's denial of the Plaintiffs' motion for summary judgment to enforce their award in arbitration and the court's grant of the TransAtlantic Affiliates' summary judgment motion to vacate the arbitration award and dismiss the case.  Thus, our review of each appellate issue in the Affiliates Lawsuit is plenary.[5]

In the Guarantor Lawsuit, the Plaintiffs and TransAtlantic filed cross-motions for summary judgment.  The district court denied the Plaintiffs' motion and granted TransAtlantic's.  Again, our review of the grant or the denial of a summary judgment is plenary.  Our standard of review of the district court's rulings should not, however, be confused or equated with the extremely restricted and deferential standard to which federal courts are held when reviewing arbitration proceedings themselves, including the conduct of the arbitrator and the arbitration award.[6]

---

[5] Six Flags Over Texas, Inc. v. Int'l Brotherhood of Elec. Workers, Local No. 116, 143 F.3d 213, 214 (5th Cir. 1998).

[6] Brook v. Peak Int'l, Ltd., 294 F.3d 668, 672 (5th Cir. 2002)(noting that the de novo standard of review is "intended to reinforce the strong deference due an arbitrative tribunal")(quoting McIlroy v. Paine Webber, Inc., 989 F.2d 817, 820 (5th Cir. 1993)).

7

B.    The Affiliates Lawsuit

The TransAtlantic Affiliates participated fully in the arbitration proceedings, never objecting to their being subject to arbitration or to any other aspect of the proceedings except for the results reached by the arbitrator in making his award, which, on appeal, the TransAtlantic Affiliates, like the district court, label as manifest disregard for the law by the arbitrator.  On appeal to us, the Plaintiffs assert two independent and alternative bases for reversing the district court:  (1) the parties' waiver of the right to appeal the legal rulings and award of an arbitrator; and (2) the district court's legal error in (a) applying an impermissible standard to justify reviewing the substance of the dispute and the arbitrator's award, and, alternatively, (b) the district court's holding that the arbitrator manifestly disregarded the law of Texas governing contractual damages and that this constitutes arbitrator misconduct.[7]

1.    Waiver of Appeal

As a preliminary contention, the Plaintiffs insist that the TransAtlantic Affiliates violated an express provision of the Agreement when they filed a counterclaim seeking vacatur of the award, and that the district court erred reversibly by entertaining

_____

[7] FAA § 16 authorizes our review of the district court's order vacating the arbitration award.  See 9 U.S.C. § 16(a)(1)(E); Atlantic Aviation, Inc. v. EBM Group, Inc. 11 F.3d 1276, 1280 (5th Cir. 1994); Bull HN Info. Sys., Inc. v. Hutson, 229 F.3d 321, 327 (1st Cir. 2000); Jays Foods, L.L.C. v. Chem. & Allied Prod. Workers Union, 208 F.3d 610, 613 (7th Cir. 2000).

8

that counterclaim which unquestionably constitutes an appeal of the arbitration proceedings and the arbitrator's award. The Plaintiffs rely on the fifth paragraph of § 17.2.2, which contains the arbitration provision of the Agreement:

> The decision of the arbitrator shall be final and binding on all Shareholders and shall be enforceable in any court of competent jurisdiction. <u>The Shareholders agree to exclude any right of</u> application or <u>appeal to the courts of any jurisdiction in connection with any question of law arising in the course of arbitration or with respect to any award made</u>, except for enforcement purposes as stated above. (emphasis added)

In their district court counterclaim, the TransAtlantic Affiliates do not assert any vice in the making of the Agreement or their joinder therein; neither do they contest the general applicability of the above-quoted waiver of appeal. Rather, they take the position that, despite its unambiguous and unconditional wording, the contractual waiver of the right to appeal in <u>any</u> court <u>anywhere</u> regarding <u>any</u> question of law or <u>any</u> award is inapplicable to an appeal based on a claim that an award was made in manifest disregard for the law. This is so, they argue, because that constitutes "misconduct" by the arbitrator. We perceive this argument as advocating a policy that a general waiver of appeal that does not expressly state that the waiver applies even to the four grounds listed in § 10(a) of the FAA, does not preclude the seeking of vacatur on one or more of those grounds.

Even assuming <u>arguendo</u> that the Agreement's broad and

9

unconditional waiver of judicial appeal would not prohibit an appeal grounded in one or more of § 10(a)'s grounds, the TransAtlantic Affiliates were not entitled to appeal the arbitrator's award here by asserting manifest disregard for the law. First, we have never reversed our rejection of the "manifest disregard for the law" standard of review of arbitration awards in commercial contract cases. We must, therefore, reject the TransAtlantic Affiliates position (which was successful in the district court) equating manifest disregard for the law with "misconduct by the arbitrator," the latter being one of the four exclusive grounds listed in § 10(a) of the FAA for vacating an arbitration award. Consequently, even when we assume without granting that the TransAtlantic Affiliates' waiver of appeal does not apply to a claim of arbitrator misconduct, such an appeal cannot be based on manifest disregard of the law as a proxy for such misconduct.

As signatories to the Agreement, which contains the arbitration clause that includes the quoted waiver of appeal, the TransAtlantic Affiliates are held to knowledge of the law of arbitration, including the extremely narrow and chary approach of the federal courts to an appeal of the merits of an arbitration award, especially when appeal has been waived unconditionally in the contract. This deemed knowledge includes, inter alia, that the list of grounds for review contained in § 10(a) of the FAA is exclusive and, more importantly, that in this circuit manifest

disregard for the law is not equated with arbitrator's misconduct. Thus, the district court erred as a matter of law in hearing the appeal, which the TransAtlantic Affiliates dressed in the garb of a counterclaim, grounded in manifest disregard of the law.

Our long-standing rejection of that ground for vacatur in commercial contract cases pretermits its being considered under the aegis of any of the four grounds under § 10(a) <u>even</u> <u>if</u> appeals based on § 10(a) are not prohibited by the waiver of appeal in the Agreement. We must, therefore, reverse the district court's vacatur of the arbitration award as it applies to the TransAtlantic Affiliates.

2. <u>Alternative Ground for Reversal: Merits of Appeal</u>

Furthermore, even if we assume without granting that the waiver of appeal is inapplicable here, and assume further that, in this commercial contract case governed by Texas substantive law, manifest disregard of the law could somehow constitute misconduct by the arbitrator, our review of the district court's vacatur of the award vis-à-vis the TransAtlantic Affiliates on those grounds ultimately leads to reversal.

a. <u>Governing Law; the Arbitration Provision</u>

Article XVII of the Agreement contains § 17.2, which is styled <u>Governing Law and Dispute Resolution</u>. Subsection 17.2.1 specifies that the "Agreement shall be governed and interpreted according to the substantive law of the State of Texas." That is followed by subsection 17.2.2, which is the six-paragraph arbitration provision

11

of the Agreement.  The first sentence of the first paragraph of 17.2.2 states:

> Any and all disputes or differences relating to, arising out of or in connection with this Agreement which cannot be settled amicably shall be finally settled by arbitration pursuant to this Section 17.2.2. (emphasis added).
> ....

The second paragraph of 17.2.2 then reiterates:

> The substantive law of Texas shall be applied without reference or regard to any rules and procedures regarding conflicts of law which would refer the matter to the laws of another jurisdiction.

   b.   The Dispute

At this juncture, the details of the controversy underlying the dispute between the two shareholder groups and their respective guarantors are not important.  It is sufficient unto this appeal that the controversy involved accusations by the Plaintiffs that the Defendants breached the Agreement in such a manner as to cause the Concession Contract to be lost, thereby damaging Tarpon-Benin and its shareholders.  The dispute is a stereotypical breach of contract controversy, and the Plaintiffs instigated arbitration in an effort to resolve their breach of contract claims.

At the end of the day, the arbitrator ruled in favor of the Plaintiffs, concluding that the Defendants had breached their obligations under the Agreement, causing Tarpon-Benin to violate express obligations under the Concession Contract following the initial drilling of a dry hole in Block 2, including specifically

12

the obligations to provide a training program for the citizens of Benin and to conduct extensive geophysical operations. This, according to the arbitrator, resulted in the corporation's loss of the Concession Contract. In the arbitration proceedings, the Plaintiffs asserted that the loss of the Concession Contract was caused at least in part by TransAtlantic's unilateral notification to the government of Benin that TransAtlantic was "relinquishing" its interest in Tarpon-Benin —— a step that the Plaintiffs insisted neither TransAtlantic nor its affiliates had the legal right to take. This in turn prompted the Plaintiffs to refuse to accept TransAtlantic's "declarations of transfer." Based on all oral and written submissions, the arbitrator concluded that the TransAtlantic Affiliates had breached the Agreement, causing the Plaintiffs to suffer damage of $1.35 million, plus fees and interest.[8]

c.  <u>Vacatur of Arbitration Award to Affiliates</u>

In the Affiliates' Lawsuit, the district court ignored the waiver of appeal, ignored our long-standing rejection of manifest disregard of the law as grounds for vacatur in commercial contract cases, and proceeded to consider the merits of the arbitration award against the TransAtlantic Affiliates under the manifest error doctrine, ultimately reversing the arbitration ruling and vacating the award. It is anything but clear, however, that we have <u>ever</u>

---

[8] <u>See</u> <u>supra</u> n.3.

accepted the manifest error doctrine as a ground for vacating arbitration awards in commercial contract cases in which the substantive law of Texas is applicable under the Federal Arbitration Act ("FAA"). Indeed, we expressly <u>rejected</u> that doctrine in <u>McIlroy v. PaineWebber, Inc.</u>[9] and <u>R.M. Perez & Associates., Inc. v. Welch</u>.[10] Those precedents not only recognize the exclusivity of the list of four grounds for vacatur expressly set forth in § 10 of the FAA, to wit, (1) The award was procured by corruption, fraud, or undue means; (2) there is evidence of partiality or corruption among the arbitrators; (3) the arbitrators were guilty of misconduct which prejudiced the rights of one of the parties; or (4) the arbitrators exceeded their powers.[11] They also eschew manifest disregard as either an additional ground for vacatur or a manifestation of arbitrator misconduct.

We acknowledge that the subsequent statement in <u>Williams v. Cigna Financial Advisers, Inc.</u>,[12] to the effect that "clear approval of the 'manifest disregard' of the law standard in the review of arbitration awards under the FAA" was signified by the Supreme

_____

[9] 989 F.2d 817, 820 n.2 (5th Cir. 1993)(noting this circuit's refusal to adopt manifest disregard for the law as a ground for vacatur).

[10] 960 F.2d 534, 539 (5th Cir. 1992)("[T]his circuit never has employed a 'manifest disregard of the law' standard in reviewing arbitration awards").

[11] <u>See</u> <u>id.</u> at 540 (quoting <u>Forsyth Int'l, S.A. v. Gibbs Oil Co. of Texas</u>, 915 F.2d 1017, 1020 (5th Cir. 1990)).

[12] 197 F.3d 752, 759 (5th Cir. 1999).

14

Court in First Options,[13] sent a somewhat conflicting signal by referring to dicta included in the parenthetical citation to an earlier case. The above-quoted statement from Williams is likewise dicta, as the controversy there involved employment discrimination, to which a different standard might apply. Furthermore, the arbitration award in that case was affirmed, not vacated. But even if the subject pronouncement in Williams were not dicta and no distinction could be drawn on the basis of that being an employment case, we would remain bound to follow the pronouncements in Perez and McIlroy as earlier precedents,[14] in the absence of an unequivocal and unambiguous reversal by the Supreme Court — and, we cannot read First Options to qualify as such for issues such as those under consideration here.

It is no longer necessary to repeat the jurisprudential authority for the universally recognized proposition that arbitration is favored. When it comes to an order of the district court that vacates an arbitration award, our review is plenary.[15] And, in conducting our plenary review, we defer to the arbitrator's

---

[13] First Options of Chicago, Inc. v. Kaplan, 517 U.S. 938, 942 (1995).

[14] See Smith v. Penrod Drilling Corp., 960 F.2d 456, 459 n. 2 (5th Cir. 1992)(acknowledging that the earlier of prior conflicting panel decisions control).

[15] Forsythe Int'l, S.A. v. Gibbs Oil Co. of Texas, 915 F.2d 1017, 1020-21 (5th Cir. 1990).

15

resolution of the dispute whenever possible.[16]  But even if we were to assume arguendo that the district court did not err in applying the manifest error standard (or that we could affirm for other reasons by applying, de novo, one of the four standards of § 10 of the FAA), we would reverse that court's vacatur in the Affiliates Lawsuit.

As noted, the Agreement specifies that the substantive law of Texas is controlling.  Without reiterating the extensive case law cited by the parties in their respective appellate briefs, we are convinced that the arbitrator's award against the TransAtlantic Affiliates cannot be reversed and vacated on the basis of manifest disregard of Texas law.  If we were authorized to review the substance of the arbitrator's award under a less deferential standard, we, like the district court, might find the damages too speculative; but we have no such authority and neither did the district court.  Furthermore, even if we were to conclude that, under the evidence here, the damages awarded by the arbitrator were indeed speculative, we would not view this putative error as rising to the level of manifest disregard of the law.  A difference of opinion between courts as to the degree of speculation required to cross that line does not even approach the level of egregiousness required to constitute manifest disregard; it amounts to nothing more than a difference of opinion among jurists of reason.

---

[16] Anderman/Smith Operating Co. v. Tennessee Gas Pipeline Co., 918 F.2d 1215, 1218 (5th Cir. 1990).

16

But the boundaries of federal courts' latitude in this respect are far too narrow to permit such a review and ruling by a court that is considering enforcement of an arbitrator's award under circumstances such as these. Moreover, there is a surfeit of Texas common law to the effect that majority shareholders may owe a fiduciary-like duty to minority shareholders, casting significant doubt on the clarity and certainty of the Texas law applicable to this issue.[17] As Texas law is, at a minimum, unclear on the underlying contractual cause of action asserted by the Plaintiffs in the instant arbitration proceedings, neither we nor the district court are legally positioned to say that the arbitrator was guilty of prejudicial misconduct, exceeded his powers, or otherwise opened his award to the possibility of reversal by the court. We repeat for emphasis that, even though we might disagree with the arbitrator's analysis and even though we might judge the damages to be speculative, the acts of the arbitrator in this case fall well short of the kind of misconduct required to constitute grounds for vacatur. There is no hint of arbitrariness, caprice, or reckless disregard for the provisions of Texas law governing this matter. As such, the district court erred as a matter of law in vacating the arbitration award against the TransAtlantic Affiliates on grounds of arbitrator misconduct.

---

[17] See, e.g., Patton v. Nicholas, 279 S.W.2d 848 (Tex. 1955); Davis v. Sheerin, 754 S.W.2d 375 (Tex. App.——Houston [ISD Dist.] 1988, writ denied); Duncan v. Lichtenberger, 671 S.W.2d 948 (Tex. App.——Fort Worth 1984, writ ref'd n.r.e.).

In summary, on the basis of the parties' waiver of the right to appeal any aspect of an arbitration award and, alternatively, on the basis of the court's legal errors, first in applying the manifest-disregard-of-the-law standard and then in misapplying it to the instant facts, we reverse the court's vacatur, reinstate the award to the Bettis Affiliates, and remand for enforcement by the court after conducting any ministerial proceedings, consistent herewith, that might be needed to effectuate enforcement of the award.

C.    The Guarantor Lawsuit

1.    Amenability of TransAtlantic to Arbitration Under the Agreement

After the Plaintiffs invoked the arbitration clause of the Agreement and commenced proceedings, TransAtlantic asserted that, as a non-shareholder, guarantor-only, signatory to the Agreement, it was not bound by the arbitration provisions of the Agreement. TransAtlantic formalized this contention in its Statement of Objections filed early in the arbitration proceedings.  The arbitrator rendered a preliminary decision, holding that both TransAtlantic and Bettis Group were proper parties to the arbitration, regardless of the fact that they had signed the Agreement as guarantors only.  Thereafter, however, TransAtlantic refused to participate in the arbitration proceedings.

When, following completion of arbitration, the Guarantor Lawsuit was instituted by the Plaintiffs to enforce their award,

18

TransAtlantic repeated its contention that it was not subject to the binding arbitration provision of the Agreement. TransAtlantic advanced this position in the district court by filing a counterclaim in which it reiterated the contention that the arbitrator had rejected in his preliminary ruling, i.e., that TransAtlantic was not subject to arbitration.

a.  <u>Waiver</u>

As an initial contention, the Plaintiffs insist that TransAtlantic waived any right it might have had to challenge the arbitrator's preliminary ruling that TransAtlantic is subject to the instant arbitration. They ground this waiver claim not in the wording of the Agreement but in Tex. Civ. Prac. & Rem. § 172.082(f) (hereafter "82(f)"), which states:

> If the arbitration tribunal rules as a preliminary question that it has jurisdiction, a party waives objection to the ruling unless the party, not later than the 30th day after the date the party receives notice of that ruling, requests the district court of the county in which the place of arbitration is located to decide the matter.

Keeping in mind that this enforcement action was instituted in federal court and that TransAtlantic filed its counterclaim there, asserting that it is not subject to arbitration, we must examine the applicability of 82(f) in the framework of the FAA and the International Rules of the AAA, as well as the Agreement's clauses addressing arbitration and the choice of Texas substantive law.

First, the FAA contains no mechanism for a party in

19

TransAtlantic's position to bring an interlocutory appeal of an arbitrator's ruling that such party is subject to arbitration. Under the FAA, a party seeking to compel arbitration can seek court relief under § 4; a successful party can seek enforcement of the arbitration award under § 9; a party against which an award is made can seek to vacate such an award under § 10 by filing a motion pursuant to § 12 within three months after the award is rendered. But we have been referred to nothing in the FAA or in the AAA's International Rules (and have found nothing on our own) that authorizes a party to seek an interlocutory federal court review of a preliminary ruling by the arbitrator to the effect that the party is subject to arbitration.

It follows, then, that if we were to view 82(f) as being substantive in nature, parties situated like TransAtlantic would have no remedy in federal court: They could not bring interlocutory appeals to the district courts under the FAA; and attempts to bring post-award petitions to vacate arbitration awards would be thwarted as time-barred by 82(f). We conclude for two reasons, therefore, that 82(f) does not block judicial consideration of TransAtlantic's challenge to its susceptibility to arbitration on the basis of waiver.

First, we are satisfied that this provision of the Texas Civil Practice and Remedies Code is procedural rather than substantive; and, second, that even if it were substantive, 82(f) would be preempted because it would be in direct conflict with the FAA. We

20

conclude, therefore, that TransAtlantic did not <u>waive</u> its right to challenge the arbitrator's preliminary determination that it was subject to arbitration in this case.  (Neither did TransAtlantic waive or forfeit its right to contest the preliminary ruling by filing objections with the arbitrator:  Such limited appearances to contest jurisdiction are not general appearances that have the effect of submitting to the jurisdiction of the tribunal.)

   b.   <u>Guarantors' Agreement to Arbitrate</u>

TransAtlantic insists that, by signing the Agreement "for the sole purpose of guaranteeing certain obligations" of the TransAtlantic Affiliates as shareholders, and then only "to the extent specifically provided in this Agreement," neither it nor Bettis Group agreed to arbitrate, irrespective of the commitment to arbitrate of those other signatories whose obligations under the Agreement they guarantee.  We note at the outset that, despite the expressly limited substantive purpose of TransAtlantic's joinder in the Agreement, i.e., as guarantor only, its position is different from a purely <u>non</u>-signatory guarantor (one who signs a separate guaranty) seeking to avoid arbitration.  Generally, a non-signatory guarantor to an agreement containing an arbitration provision is not bound by that provision; the opposite is frequently true for signatory guarantors.[18]

We also note that the posture of this case — a signatory's

_____

   [18] <u>See</u> <u>Asplundh Tree Expert Co. v. Bates</u>, 71 F.3d 592, 595 (6th Cir. 1995).

21

unilateral refusal to participate in an arbitration proceeding that eventually produces an award against such signatory, followed by a suit to enforce the award, in which suit the signatory counters by asserting an affirmative defense of not having been subject to a broad form arbitration clause —— differs significantly from the more common posture of a guarantor (1) asserting such an affirmative defense in a suit to <u>compel</u> <u>arbitration</u> or (2) seeking a declaratory judgment that it is not subject to such an arbitration clause. Here, the district court's standard of review of a ruling by the arbitrator that a <u>signatory</u> party is subject to arbitration under a broad form arbitration provision is decidedly more limited in scope and deferential to the arbitrator than in either of the more familiar settings of a suit to compel arbitration or a declaratory action, in either of which the district court, rather than the arbitrator, would have the first bite at the apple and the arbitrator basically would have none.

Irrespective of context, however, the law is settled that, to answer the question whether a signatory party has agreed to arbitrate a dispute, two considerations must be addressed:

> (1) Whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement. When deciding whether the parties agreed to arbitrate the dispute in question, "courts generally ...should apply ordinary state-law principles that govern the formation of contracts." In applying state law, however, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of

the arbitration clause itself must be resolved in favor of arbitration." The second step is to determine "whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims."[19]

It is axiomatic that, unless an arbitration agreement expressly provides otherwise, the arbitrator is empowered to rule on his own jurisdiction.[20] This includes <u>subject</u> <u>matter</u> jurisdiction, i.e., <u>which</u> <u>issues</u> are subject to arbitration and which are outside its scope; and <u>personal</u> jurisdiction, i.e., <u>who</u> is or is not bound to arbitrate. Here, none challenge the jurisdiction of the arbitrator to decide the basic contractual issues submitted by the Plaintiffs, but the Defendants continue to challenge the arbitrator's jurisdiction to decide the liability of Bettis Group and TransAtlantic as guarantors of any award against those whose obligations they have guaranteed under the Agreement. Likewise, none challenge the existence or validity of the Agreement or the arbitration provisions in it, but do challenge the susceptibility of the two guarantors to mandatory arbitration, relying on the express limitations of their joinder in the Agreement to eschew amenability to arbitration.

The Agreement contains no express statement that the

---

[19] <u>Webb v. Investacorp., Inc.</u>, 89 F.3d 252, 257-58 (5th Cir. 1996)(internal citations omitted).

[20] <u>See</u> American Arbitration Association, International Arbitration Rules art. 15 ("The tribunal shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."); <u>see</u> <u>also</u> Tex. Civ. Prac. & Rem. § 172.082(a).

23

guarantors are bound to arbitrate; but neither does it contain an express statement that the guarantors are exempt from arbitration. Thus, in applying the rules and maxims of contract interpretation, the arbitrator was bound to consider all facially applicable provisions in the context of the Agreement as a whole when determining whether subject matter jurisdiction included the power to decide personal jurisdiction over the guarantors and subject matter jurisdiction over their liability as guarantors to the claimants on any amount awarded against those whose obligations are guaranteed. In this case, the arbitrator went the extra mile by looking beyond the four corners of the Agreement and hearing extrinsic evidence affecting the jurisdictional issues.

Our examination of the Agreement as a whole, the preliminary ruling by the arbitrator and his award, and other matters in the record, satisfies us that the arbitrator was empowered to determine his own jurisdiction (including jurisdiction over the guarantors), that he exercised discretion in making those determinations, and that his determinations are supported by the Agreement as a whole and the circumstances of its execution.[21]

We have already noted that TransAtlantic and Bettis Group are signatories to the Agreement, and that they expressly guarantee the

---

[21] The instant situation is significantly different from that in Grundstad v. Ritt, 106 F.3d 201 (7th Cir. 1997), in which neither the guarantee nor the guarantor was mentioned in the agreement and the arbitration clause expressly referred to the two principals.

24

obligations undertaken by other parties to the Agreement, which parties and objections are indisputably subject to arbitration. Structurally, Article XVII of the Agreement addressing applicable law and dispute resolution, first designates substantive law of Texas as applicable and then, in the first sentence of § 17.2.2, states unequivocally and unconditionally that "[a]ny and all disputes or differences relating to, arising out of or in connection with this Agreement...shall be finally settled by arbitration pursuant to this Section 17.2.2" (emphasis added). Although it is true, as strenuously insisted by TransAtlantic, that the subsequent sentences of that paragraph and the remaining paragraphs of Section 17.2.2 contain multiple references to "the Shareholders" and none to the guarantors, the above-quoted first sentence contains no limitation —— no reference to shareholders, or to guarantors, or to anything other than unqualified applicability to any and all disputes. Indeed, rather than supporting the inference that the commitment to settle "any and all disputes or differences relating to, arising out of or in connection with" the Agreement should not apply to the guarantors, the omission of the limiting reference to shareholders from the initial sentence of Section 17.2.2 provides support for the arbitrator's determination that the guarantors are subject to arbitration: Inclusio unius est exclusio alterius. And, like the position of the guarantors as signatories to the Agreement, the statement appearing on page 2, immediately preceding "RECITALS," confirms that the guarantors "are

<u>entering into</u> this Agreement," albeit for the limited purpose of guaranteeing certain obligations.

Irrespective, then, of our standard of review — whether, pursuant to FAA, one that is extremely deferential to the arbitrator, or completely <u>de novo</u>,[22] or somewhere in between (such as abuse of discretion) — we ultimately agree with the arbitrator's conclusion that (1) he has the power to determine his own jurisdiction, including the substantive question of the responsibility of the guarantor for any award in arbitration against those whose commitments were guaranteed, and the <u>in personam</u> amenability of the guarantors to arbitration; (2) that, when the Agreement is read as a whole, both guarantors are bound to arbitrate; and (3) as guarantor, TransAtlantic is bound jointly and severally with those shareholders of Tarpon-Benin against whom the award in arbitration was rendered. These conclusions comport with the frequently repeated maxims that (1) "[W]here the parties include a broad arbitration provision in an agreement that is 'essential' to the overall transaction, we will presume that they intended the clause to reach all aspects of the transaction"[23] and

---

[22] See <u>generally</u> <u>First Options</u>, 514 U.S. 938 (1995); <u>Kona Tech. Corp. v. S. Pac. Transp. Co.</u>, 225 F.3d 595 (5th Cir. 2000).

[23] See <u>Personal Security & Safety Systems Inc. v. Motorola Inc.</u>, 297 F.3d 388, 394 (5th Cir. 2002); <u>see</u> <u>also</u> <u>Neal v. Hardee's Sys., Inc.</u>, 918 F.2d 34, 38 (5th Cir. 1990)("We hold that when the parties included a broad arbitration clause in the essential [contracts] covering 'any and all disputes,' they intended the clause to reach all aspects of the parties' relationship....").

26

(2) that arbitration clauses are to be liberally read to implement congressional policy expressed in the Federal Arbitration Act.[24]

Given the totally broad form arbitration provision of the Agreement, the recognition of the guarantors as parties to the Agreement for the limited purpose of guaranteeing obligations created in the Agreement, and the joinder of the guarantors as signatories to the Agreement, we are convinced that the arbitrator had and correctly exercised the power to determine his jurisdiction over TransAtlantic as guarantor and over the extent of TransAtlantic's obligation as guarantor. But even if our review is de novo, we would agree with the arbitrator's jurisdictional ruling. The fact that TransAtlantic boycotted the arbitration proceedings after the arbitrator ruled preliminarily that TransAtlantic was subject to arbitration is of no moment. The arbitrator restricted his award vis-à-vis TransAtlantic to its role as guarantor, so TransAtlantic has no basis for complaining that the arbitrator exceeded his authority in that regard. And, inasmuch as we have concluded earlier that the district court's vacatur of the arbitrator's award against the TransAtlantic Affiliates must be reversed and the award enforced, our conclusion that the arbitrator was correct in holding TransAtlantic subject to arbitration not only requires reversal of the district court's jurisdictional ruling to the contrary, but also requires reversal

---

[24] See, e.g., Penzoil Exploration and Prod. Co. v. Ramco Energy Ltd., 139 F.3d 1061, 1068 (5th Cir. 1998).

27

of that court's vacatur of the award against TransAtlantic as guarantor.

## III. Recap

For the foregoing reasons, we reverse the district court's vacatur of the arbitrator's award as having been granted in manifest disregard of Texas law governing contractual damages, thereby constituting misconduct by the arbitrator. And although we agree that TransAtlantic did not waive its right to challenge the arbitrator's preliminary ruling on jurisdiction, we also reverse the court's reversal of the arbitrator's ruling that TransAtlantic is subject to arbitration. We reverse as well the court's vacatur of the arbitrator's award against TransAtlantic as guarantor. We therefore reinstate the award of the arbitrator in all respects and remand this case to the district court with instructions to enforce the award of the arbitrator in favor of the Plaintiffs in both of the cases that are consolidated in this appeal, doing so against the several Defendants-Appellees in the Affiliates Lawsuit, No. 01-20379, and jointly and severally against TransAtlantic Petroleum Corp., Defendant-Appellee in the Guarantor Lawsuit, No. 01-20377. REVERSED and REMANDED with instructions.